# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

CURTIS WHITE            )
                                     )
     v.                   )       CAUSE NO.: 1:09-CR-79-TLS
                                     )       (1:12-CV-147)
UNITED STATES OF AMERICA   )

## OPINION AND ORDER

This matter is before the Court on the Defendant's pro se Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 80], filed on August 1, 2012. For the reasons set forth in this Opinion and Order, the Defendant's Motion is denied.

## BACKGROUND

On July 22, 2009, a federal grand jury returned a single-count Indictment [ECF No. 12] against the Defendant, charging him with a violation of 21 U.S.C. § 841(a)(1) for possession with intent to distribute five grams or more, but less than 50 grams, of a mixture and substance containing a detectable amount of crack cocaine, a Schedule II controlled substance.

On September 25, 2009, the Defendant—who was represented by attorney Mark Paul Smith—and the Government filed a Plea Agreement [ECF No. 19] in which the Defendant agreed to plead guilty to the single count of the Indictment. (Plea Agr. ¶ 8(a).) The Plea Agreement contained the Defendant's acknowledgment that the Court would determine an appropriate sentence:

> I understand that under the U.S. Sentencing Guidelines, the Court, in light of an investigation by the United States Probation Office, will determine the applicable sentencing guideline range, and that the Court will determine all matters, whether factual or legal, relevant to the application of the U.S. Sentencing Guidelines. I

understand that the U.S. Sentencing Guidelines are advisory only, and that the specific sentence to be imposed upon me will be determined by the judge after a consideration of a pre-sentence investigation report, input from counsel for myself and the government, federal sentencing statutes, and the U.S. Sentencing Guidelines.

(*Id.* at ¶ 7.) The Plea Agreement contained the Defendant's acknowledgment of the possible penalties for his conviction, including "imprisonment of not less than 5 years and not more than 40 years." (*Id.* at ¶ 8(b).) The Plea Agreement also contained the following waiver:

I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed, I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this Plea Agreement; with this understanding and in consideration of the government's entry into this Plea Agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(*Id.* at ¶ 8(e).)

On October 9, 2009, the Court conducted a change of plea hearing, at which the Defendant, pursuant to the Plea Agreement, pled guilty to the single count of the Indictment. [ECF No. 21.] Prior to accepting the Defendant's plea, the Court took the Defendant's oath and made a detailed inquiry into his competence to plead, the voluntariness of his plea, and his understanding regarding specific terms of the Plea Agreement. The Court found that the Defendant was fully competent and capable of entering an informed plea, that the Defendant was aware of the charges and the consequences of the plea, and that the plea of guilty was knowing and voluntary, and supported by an independent basis in fact containing each of the essential

elements of the offense. The Court specifically inquired regarding (1) the Defendant's waiver of his right to appeal his conviction, sentence, and any restitution order imposed or the manner in which his conviction, sentence, or restitution order was determined or imposed; and (2) his waiver of his right to collaterally attack through a habeas corpus petition his conviction, sentence, or restitution order and the manner by which his conviction, sentence, or restitution order was imposed. During the hearing colloquy, the Defendant affirmed his understanding of all terms contained within the Plea Agreement. Accordingly, the Court accepted the plea and adjudged the Defendant guilty of the offense.

In preparation for sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR), which calculated a United States Sentencing Guideline range of 188 to 235 months of imprisonment for the Defendant's offense, based on the Defendant's total offense level of 31 and criminal history category of VI. Due to the Defendant's prior felony convictions, the Defendant was deemed to be a "career offender" under U.S.S.G. § 4B1.1. The Defendant did not file any objections to the PSR, including its calculations related to his total offense level and criminal history category.

On January 19, 2010, the Court conducted the Defendant's sentencing hearing. After being sworn in by the Court, the Defendant confirmed that he had a sufficient opportunity to review and discuss the PSR with his attorney; and that he had no objections to the facts set forth in the PSR, or the probation officer's calculations of his total offense level or criminal history category. The Defendant then presented evidence in support of his Motion [ECF No. 23], filed pursuant to 18 U.S.C. § 3553(a), for a downward variance from the applicable guideline range; specifically, the Defendant requested a sentence of 60 months. The Court received the testimony

of five defense witnesses, including the Defendant, all of whom offered information in mitigation of punishment. Following the presentation of evidence, the Defendant confirmed that he agreed with everything his attorney had said on his behalf during the sentencing hearing. After reviewing the PSR and the presented evidence, the Court denied the Defendant's Motion for a downward variance and determined that, based on the Defendant's criminal history and the seriousness of his offense, a sentence of 188 months was sufficient, but not greater than necessary, to comply with the purposes of punishment.

On March 3, 2010, the Defendant filed a notice of appeal [ECF No. 32] to the United States Court of Appeals for the Seventh Circuit. On March 11, 2010, Attorney Smith filed a Motion to Withdraw with the Court of Appeals. On July 8, 2010, the Court of Appeals granted the Motion to Withdraw and further ordered that attorney Richard H. Parsons be appointed to represent the Defendant [ECF No. 47]. On February 18, 2011, the Court of Appeals issued an order [ECF No. 54] dismissing the Defendant's appeal and granting a Motion to Withdraw, filed by the Defendant's appointed attorney under *Anders v. California*, 386 U.S. 738 (1967), because the Defendant's appointed attorney was unable to discern a nonfrivolous issue to pursue due to the waiver provision in the Plea Agreement.

On May 11, 2012, the Defendant filed three pro se motions, including a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 65]; a Motion Requesting an Evidentiary Hearing and a Referral to the United States Magistrate Judge [ECF No. 68]; and a Motion for Leave to Expand the Record [ECF No. 69]. The Government filed a Response [ECF No. 79] on July 10, 2012. The Defendant then filed an Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person

in Federal Custody [ECF No. 80]. The Government filed a Response to the Amended Motion [ECF No. 83] on August 14, 2012, and the Defendant filed a Reply [ECF No. 84] on September 14, 2012. The Defendant also filed a Motion for Leave to Conduct Discovery or in the Alternative for an Evidentiary Hearing [ECF No. 86] on September 14, 2012. On December 30, 2013, the Court issued an Order rendering moot the Defendant's original Motion under § 2255 [ECF No. 65]. The Defendant's remaining motions are ripe for ruling.[1]

## DISCUSSION

A court may grant relief from a federal conviction or sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).

The Defendant's Amended Motion Under 28 U.S.C. § 2255 lists eight claims for relief,

---

[1]The Court notes that on January 21, 2015, the Defendant filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2) [ECF No. 88]. This Opinion and Order does not resolve this Motion, which is unrelated to his § 2255 Motion [ECF No. 80].

5

including: (1) ineffective assistance of counsel during the plea negotiations; (2) an invalid Plea Agreement because it was not was made knowingly or voluntarily; (3) the Government acted in bad faith during the plea negotiations; (4) the Court violated the Defendant's right to allocution; (5) the Defendant does not qualify as a "career offender" under U.S.S.G. § 4B1.1; (6) ineffective assistance of counsel on appeal; (7) ineffective assistance of counsel at sentencing; and (8) ineffective assistance of counsel with respect to the suppression of evidence. The Government argues that all eight claims should be denied because they are barred by the waiver provision in the Plea Agreement, meritless, or both.

### A.    Waiver Provision

At the outset, the waiver provision in the Defendant's Plea Agreement presents a formidable barrier to relief under 28 U.S.C. § 2255.

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999)). The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court

'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Id.* (quoting *Jones*, 167 F.3d at 1144–45); *see also Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012).

Here, the Defendant's Plea Agreement contains a provision that waives the right to appeal and the right to collaterally attack the conviction and sentence, "including but not limited to, a proceeding under Title 28, United States Code, Section 2255." (Plea Agr. ¶ 8(e).) The waiver provision is both clear and unambiguous, and the Defendant does not argue otherwise. The Defendant contends, however, that the waiver provision is unenforceable because the Plea Agreement, as a whole, was unknowing or involuntary because of ineffective assistance of counsel. *Hurlow v. United States*, 726 F.3d 958, 964-65 (7th Cir. 2013); *see also United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001) ("A waiver of appeal is valid, and must be enforced, unless the agreement in which it is contained is annulled (for example, because involuntary)." (citations omitted)). The Court will address this claim—along with the Defendant's remaining claims—below.

1.     *Ineffective Assistance of Counsel Claim ("Career Offender" Designation)*

The Defendant argues that his Plea Agreement was made unknowingly and involuntary because his attorney failed to advise him that he may be sentenced as a "career offender" under U.S.S.G. § 4B1.1.

In making his ineffective assistance of counsel claim, the Defendant asks the Court to effectively disregard his statements made within the Plea Agreement and at the change of plea

hearing. Throughout the written Plea Agreement, which the Defendant signed, the Defendant expressed his understanding of his rights and the various waivers contained in the Plea Agreement. In Paragraph 11, the Defendant stated his belief that his "lawyer ha[d] done all that anyone could do to counsel and assist [him], and that [he] . . . underst[oo]d the proceedings in this case against [him]." In Paragraph 12, he declared that he "offer[ed] [his] plea of guilty freely and voluntarily and of [his] own accord," and that "no promises ha[d] been made to [him] other than those contained in this agreement, nor ha[d] [he] been threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement."

Further, at his change of plea hearing, the Defendant stated under oath that he understood the terms of the Plea Agreement. This statement is strongly presumed to be true. *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). To grant the Defendant's claim would require the Court to find that the Defendant would not have accepted the Plea Agreement had he understood that he may be sentenced as a "career offender"—even though the Court reviewed the Plea Agreement with the Defendant, and even though the Defendant stated that he understood that there were no promises except those found in the Plea Agreement. While such statements are not an insurmountable barrier to relief, overcoming the presumption of verity afforded to sworn statements made at a change of plea hearing is an "uphill battle." *United States v. Bowlin*, 534 F.3d 654, 659–60 (7th Cir. 2008); *see also Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986) (stating that "the representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding") (citation omitted).

To establish ineffective assistance of counsel, a defendant must satisfy a two-prong

standard. *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must demonstrate

that his attorney's representation was "deficient" because it "fell below an objective standard of

reasonableness." *Id*. at 687–88. Second, a defendant must show that this deficient performance

prejudiced his defense. *Id.* at 694. Prejudice is demonstrated by a showing that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.*

> A court considering a claim of ineffective assistance must apply a strong
> presumption that counsel's representation was within the wide range of reasonable
> professional assistance. The challenger's burden is to show that counsel made errors
> so serious that counsel was not functioning as the counsel guaranteed the defendant
> by the Sixth Amendment.

*Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) (internal quotation marks and citations

omitted); *see also Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011) ("To reflect

the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [a

court's] review of an attorney's performance is highly deferential and reflects a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance.") (citing *Strickland*, 466 U.S. at 689).

Here, the Defendant fails to put forth sufficient evidence to establish an ineffective

assistance of counsel claim that overcomes the strong presumption that his previous statements

were true and accurate. The Defendant specifically cites to Paragraph 8(d) of the Plea

Agreement, which states that "[t]he United States agrees not to file an information pursuant to 21

U.S.C. § 851 regarding [the Defendant's] prior felony drug convictions." According to the

Defendant, he construed that language as a "promise[]" that he would not be sentenced as a

"career offender," and that he would, instead, receive a sentence of 60 months, the statutory

minimum sentence for a violation of 21 U.S.C. § 841(a)(1). (Def's Am. Mem. 10.)

The Defendant's argument appears to be conflating a "career offender" designation under U.S.S.G. § 4B1.1 with a sentencing enhancement under 21 U.S.C. § 841(b), which increases the statutory maximum penalties based on prior drug convictions. Section 851, as referred to in the Defendant's Plea Agreement, only applies to sentencing enhancements under § 841(b). *See Damerville v. United States*, 197 F.3d 287, 289 (7th Cir.1999) (defendants "subject to sentencing as career offenders under § 4B1.1 are not entitled to the same procedural protections as defendants subject to the § 841(b) penalty enhancements (for which § 851 applies).") (internal quotation marks and citations omitted). Thus, Paragraph 8(d) of the Plea Agreement makes no reference to the Defendant's "career offender" designation.

The record also reflects the Defendant's awareness of his "career offender" designation and its sentencing consequences. The Plea Agreement contains the Defendant's acknowledgement that his guilty plea may result in a sentence of "not less than 5 years and not more than 40 years." (Plea Agr. ¶ 8(b)). The Defendant also expressly acknowledged the possible penalties during his change of plea hearing.[2] Moreover, at the sentencing hearing, the Defendant presented evidence on a Motion for a Downward Variance, which, again, expressly acknowledged his "career offender" designation and the resulting guideline range of 188 to 235 months imprisonment. The Government's statements at the Defendant's sentencing hearing also highlighted the distinction between a "career offender" designation under U.S.S.G. § 4B1.1 and a sentencing enhancement under 21 U.S.C. § 841(b). The Government argued in opposition to

---

[2]"[Court:] The maximum possible penalty for the count charged in the indictment is imprisonment of not less than 5 years and not more than 40 years . . . Do you understand that these are the possible consequences of your plea? [The Defendant:] Yes, I do." (Change of Plea Tr. 14–15.)

the Defendant's Motion that the Defendant was granted a "substantial break" when the Government agreed [in the Defendant's Plea Agreement] to waive the sentencing enhancement, which would have resulted in a minimum sentence of 262 months. (Sentencing Hr'g Tr. 36.) Given this record, the Defendant's claim of ignorance as to his "career offender" designation and its sentencing consequences is not plausible.

And for the sake of argument, even if the Defendant's attorney failed to advise the Defendant on this issue, the Defendant puts forth no objective evidence to counteract *Strickland*'s strong presumption of reasonable professional assistance. *See Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987) ("we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland*.") Due to *Strickland*'s high bar, even a gross mischaracterization of the sentencing consequences of a plea is not proof of constitutional deficiency. *Bethel v. United States,* 458 F.3d 711, 717 (7th Cir. 2006); *see also United States v. Dumes,* 313 F.3d 372, 383 (7th Cir. 2002) (upholding denial of motion to withdraw guilty plea when defendant was not advised that he was a career offender).

As to the prejudice prong of the ineffective assistance analysis, the Defendant has also not established with objective evidence a reasonable probability that, but-for counsel's advice, he would not have accepted the plea. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996); *see also Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (citing *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (stating that, in the plea agreement context, the prejudice prong focuses on whether counsel's performance was a decisive factor in the decision to plead guilty rather than to pursue other options). The Seventh Circuit has "stated many times that a mere allegation by the defendant that he would have insisted on going to trial is not

sufficient to establish prejudice." *Bethel*, 458 F.3d at 718; *cf. Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (holding that the defendant's statement alone was insufficient to establish prejudice with respect to acceptance of a plea).

Here, the Defendant presents affidavits from himself and his wife, Ann White, to claim that his attorney failed to inform him of his "career offender" designation and the resulting sentencing consequences. But aside from the vague assertions in the Defendant's Amended Motion Under § 2255, no evidence indicates that, but for his attorney's ineffective assistance of counsel, he would not have accepted the Plea Agreement.

In light of the Defendant's previous assent and express understanding of the terms of the Plea Agreement, the Defendant has failed to produce sufficient evidence to make out an ineffective assistance of counsel claim related to his "career offender" designation.[3]

## 2. *Other Ineffective Assistance of Counsel Claims*

The Defendant also claims that his attorney(s) rendered ineffective assistance by (1) advising the Defendant to testify at his sentencing hearing; (2) failing to file a motion to suppress; and (3) performing inadequately on appeal.

However, ineffective assistance of counsel claims relating to anything other than a plea

---

[3]The Defendant also alleges that the Government acted in bad faith by including "trick language" in the Plea Agreement (Def's Am. Mem. 15); namely, by including Paragraph 8(d), which states that "[t]he United States agrees not to file an information pursuant to 21 U.S.C. § 851 regarding [the Defendant's] prior felony drug convictions." According to the Defendant, such language indicates that he "will not be given a career sentence." *Id.* As previously noted, a distinction exists between the Government's agreement not to pursue a sentencing enhancement under 21 U.S.C. § 841(b)—for which the procedural requirements of 21 U.S.C. § 851 apply—and a "career offender" designation under U.S.S.G. § 4B1.1. The Government's agreement, as articulated in Paragraph 8(d), pertained solely to a sentencing enhancement under § 841(b). Such agreements are neither uncommon nor improper. Moreover, the record reflects the Defendant's awareness of his "career offender" designation and its sentencing consequences. Accordingly, the Defendant's claim lacks merit.

negotiation are barred by an enforceable waiver. *Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000); *see also Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver). Because the Defendant's remaining ineffective assistance of counsel claims are unrelated to his plea negotiations, such claims are barred by the waiver provision in the Plea Agreement. Nonetheless, the Court will address each claim in turn.

### a.     Defendant's Testimony at Sentencing Hearing

The Defendant claims that his attorney rendered ineffective assistance of counsel by advising him to testify during his sentencing hearing. According to the Defendant, his testimony resulted "in a vigorous and harmful cross-examination" that "cast [the Defendant] in a light most negative." (Def's Am. Mem. 23.) The Defendant also claims that his attorney failed to advise him of the risks of testifying. The Defendant here is again asking the Court to effectively disregard his previous statements made at the sentencing hearing. Following the Defendant's testimony, the Court asked the Defendant whether he was satisfied with his attorney's performance, to which he responded with "yes."[4]

It is well established that a defendant possesses the ultimate authority in deciding whether to exercise his or her constitutional right to testify. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *United States v. Curtis*, 742 F.2d 1070, 1076–77 (7th Cir. 1984). In evaluating whether

---

[4]"[The Court:] Mr. White, do you agree with everything that your attorney has said on your behalf today? [The Defendant:] Today, yes, ma'am. I'm okay with it." (Sentencing Tr. 34.)

an attorney's representations regarding a defendant's decision to testify were deficient, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *United States v. Jackson*, 103 F.3d 561, 575 (7th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689) (citation omitted). Further, to challenge an attorney's performance at sentencing, a defendant must show, through objective evidence, that a shorter sentence would have been rendered, but for counsel's deficient action or failure to act. *Glover v. United States*, 531 U.S. 198, 202–04 (2001).

An ineffective assistance of counsel claim "must be accompanied by a detailed and specific affidavit which shows that the [Defendant] had actual proof of the allegations going beyond mere unsupported assertions." *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (internal quotation marks and citation omitted). Here, the Defendant offers nothing more than a bare assertion that his attorney failed to advise him as to the risks of testifying. The Defendant provides no details as to what his attorney did or did not say regarding his decision to testify. In fact, the Defendant's submitted affidavits make no reference to this claim at all. Given the record, the Defendant has failed to produce evidence to overcome a presumption that his attorney's actions were considered "sound trial strategy," *Jackson*, 103 F.3d at 575, nor has he produced any evidence to show that, but for his attorney's actions, a shorter sentence would have been rendered, *Glover,* 531 U.S. at 202–04. No evidence suggests that the Defendant would have declined to testify if informed of the risks of testifying. And in light of the Defendant's criminal record, there is no evidence to suggest that the Court would have granted the Defendant's request

for a downward variance if the Defendant had declined to testify. Thus, notwithstanding the waiver provision in the Plea Agreement, the Defendant's claim fails on the merits.

**b.     Motion to Suppress**

The Defendant also claims that his attorney rendered ineffective assistance of counsel by failing to file a motion to suppress. The Defendant specifically argues that his attorney should have challenged the search warrant that led to his arrest.

When a claim of ineffective assistance is based on counsel's failure to present a motion to suppress, a defendant must not only satisfy the two prongs of *Strickland*, but must also prove that the motion was meritorious. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005); *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004). "These are at best difficult showings to make, particularly since *Strickland* requires that [a court] presume counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ebert v. Gaetz*, 610 F.3d 404, 411–12 (7th Cir. 2010) (internal quotation marks and citation omitted).

First, the Defendant cannot show a meritorious motion to suppress. A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003) and *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted). "The judge, however, may not solely rely upon 'conclusory allegations' or a 'bare bones' affidavit when issuing a warrant." *Id.* (quoting *United States v. Koerth*, 312 F.3d 862, 877 (7th Cir. 2002). A reviewing court will "defer to the determination of the warrant-issuing judge that probable cause existed so long as 'there is substantial evidence in the record supporting the judge's decision.'" *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (quoting *Koerth*, 312 F.3d at 865).

Even if a court concludes that the affidavits were insufficient to establish probable cause, the evidence obtained in the execution of the warrant need not be suppressed if the police relied on the warrant in good faith. *United States v. Dismuke*, 593 F.3d 582, 586 (7th Cir. 2010), (abrogated on other grounds) (citing *United States v. Leon*, 468 U.S. 897, 920–21 (1984)). The good faith exception thus applies unless the affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' or the warrant-issuing judge 'wholly abandoned' his neutral judicial role and 'served merely as a rubber stamp for the police.'" *Dismuke*, 593 F.3d at 586 (quoting *Leon*, 468 U.S. at 923).

The PSR states that a search warrant was issued for the Defendant's motel room following two controlled drug buys involving the Defendant, a confidential informant, and a third-party drug buyer. Prior to each drug buy, searches were conducted on the confidential informant's person and vehicle for contraband. Each drug buy was conducted using pre-recorded buy money and audio surveillance. And each controlled drug buy produced evidence that the Defendant distributed crack cocaine to the third-party buyer. The Defendant argues that the search warrant did not establish probable cause because of insufficient controls during the drug

buy; namely, the pre-recorded buy money was not recovered from the Defendant following execution of the search warrant. However, "a controlled buy, when executed properly, is [generally] a reliable indicator as to the presence of illegal drug activity. *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (the controlled buy was adequate to show probable cause because "the confidential informant entered the building without contraband; exiting moments later, he produced cocaine, indicating the probable—if not likely—presence of illegal drug activity in the apartment."). Here, the confidential informant picked up the third-party buyer without contraband, and produced crack cocaine after transporting the third-party buyer to the Defendant's motel room. While it is theoretically possible, as the Defendant suggests, that the third-party buyer produced the crack cocaine from another source, theoretical possibility "does not negate the existence of probable cause." *Id.* (citing *United States v. Garcia*, 983 F.2d 1160, 1167 (1st Cir. 1993) (rejecting the defendant's contention that "the informant [who made the controlled buy] might have stashed cocaine elsewhere in the building out of the sight of the detective" as "strain[ing] credulity on a common-sense reading")). Again, "probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty." *Id.* (citation omitted).

The Defendant also argues that the third-party buyer was unreliable because she was a "known and active drug addict" and was assisting police "with her own personal legal exposure foremost in her mind." (Def's Am. Mem. 26.) But aside from the Defendant's unsworn assertions, the Defendant offers no evidence to show that, based on the totality of circumstances, the search warrant lacked "a fair probability" that evidence of a crime would be found in the Defendant's hotel room, *Sims*, 551 F.3d at 644, or that law enforcement officers did not execute

the warrant in good faith, *Dismuke*, 593 F.3d at 586.

Furthermore, the Defendant cannot establish the two prongs of *Strickland*, which creates a presumption that "counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Gaetz*, 610 F.3d at 411–12; *see Cieslowski*, 410 F.3d at 361 (finding that defense counsel reasonably concluded that filing motions to suppress would have put the Defendant at risk of an upward departure for obstruction of justice as well as losing the credit he would otherwise receive for accepting responsibility**).** The Defendant offers no evidence to show that, given the circumstances of his case, his attorney's decision not to file a motion to suppress "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.

Because the Defendant cannot show a meritorious motion to suppress and ineffective assistance of counsel under *Strickland*, the Defendant's claim fails.


**c.      Performance on Appeal**

The Defendant also presents a claim of ineffective assistance of counsel on appeal, arguing that his attorney had a "conflict of interest" and, consequently, "did not do a good job." (Def's Am. Mem. 22.) Here, the Defendant was represented by more than one attorney on appeal. However, the Defendant does not specify which attorney he is referring to, nor does he specify the deficient conduct that allegedly occurred. Notwithstanding the vagueness of his argument, the Defendant's claim in unsupported by the record.

Following the Defendant's filing of a notice of appeal, the Defendant's attorney, Mark Paul Smith, filed with the Court of Appeals a timely Motion to Withdraw from further

representation of the Defendant, which was granted on July 8, 2010. Such a motion is permissible under the Federal Rules of Appellate Procedure, s*ee* 7th Cir. R. 51(a) ("Trial counsel in a criminal case, whether retained or appointed by the district court, is responsible for the continued representation of the client desiring to appeal unless specifically relieved by the court of appeals upon a motion to withdraw. Such relief shall be freely granted"); and thus, Attorney Smith's Motion to Withdraw presents no grounds for an ineffective assistance of counsel claim.

Further, following the appointment of substitute counsel, the Defendant's appointed attorney filed a Motion to Withdraw, pursuant to *Anders*, because he was unable to discern a nonfrivolous issue to pursue due to the waiver provision in the Plea Agreement. 386 U.S. 738. The Court of Appeals subsequently issued an order dismissing the Defendant's appeal and granting the Motion to Withdraw. Because the Defendant's attorney determined that the Defendant's claims were barred on appeal, he was acting to avoid frivolous litigation—a duty that every attorney must uphold. *See Nunez v. United States*, 546 F.3d 450, 455 (7th Cir. 2008) ("a lawyer has a duty to the judiciary to avoid frivolous litigation-and an appeal in the teeth of a valid waiver is frivolous"). Therefore, the actions of the Defendant's appointed attorney do not constitute ineffective assistance of counsel either—and the Defendant's claim necessarily fails.

3.      *Career Offender Designation*

The Defendant further contends that his prior convictions did not qualify him as a "career offender" under U.S.S.G. § 4B1.1. Because the Defendant's claim falls squarely within the waiver provision of the Plea Agreement, the claim is effectively barred. *See Keller*, 657 F.3d at 681. Even so, the Defendant's claim fails on the merits.

A career offender is a defendant who has at least two prior felonies committed when he was at least 18 years old, and each felony was for a violent or controlled substance offense. U.S.S.G. § 4B1.1(a). A "controlled substance offense" is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense." U.S.S.G. § 4B1.2(b).

When making a career offender determination, a court is generally required to take a categorical approach, which limits the court to considering the "fact of conviction and the statutory elements of the offense." *United States v. King*, 643 F.3d. 1003, 1004 (7th Cir. 2011); *see Taylor v. United States*, 495 U.S. 575, 602 (1990). According to the PSR, the Defendant was convicted of the following felony offenses in the state of Indiana: (1) Dealing in Cocaine or [a] Narcotic Drug (02D04-9612-CF-627); and (2) Dealing in Cocaine or [a] Narcotic Drug (02D04-9903-CF-114). Pursuant to the Indiana Criminal Code, a person commits the offense of "Dealing in Cocaine or [a] Narcotic Drug" by knowingly or intentionally manufacturing or delivering cocaine or a narcotic drug classified in Schedule I or II, or by possessing with the intent to manufacture or deliver cocaine or a narcotic drug classified in Schedule I or II. I.C. 35-48-4-1. Accordingly, the Probation Office correctly determined, based on the fact of the Defendant's convictions and the statutory elements of the offenses, that the Defendant's two prior felony convictions constituted "controlled substance offense[s]" because each involved felony distribution of a controlled substance.

The Defendant appears to argue that his prior convictions do not qualify as "controlled

substances offense[s]" because his judgments of conviction did not specify a drug type or drug quantity. But again, a categorical analysis applies here—and categorically, any violation of I.C. 35-48-4-1 involves a "controlled substance offense," regardless of whether or not a judgment of conviction specifies a drug type or quantity. Thus, based on the Defendant's prior felony convictions, he was correctly designated as a "career offender" under U.S.S.G. § 4B1.1.

### 4.    *Right to Allocution*

Lastly, the Defendant claims that his right to allocution was violated by the Court during his sentencing hearing. Because the Defendant's claim falls within the waiver provision of the Plea Agreement, the claim is effectively barred. *See Keller*, 657 F.3d at 681. The Defendant's claim also fails on the merits.

Pursuant to Federal Rule of Criminal Procedure 32, prior to sentencing, the Court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). Rule 32 "does not purport to set out a script that the district courts must follow when advising defendants of their right to allocution." *United States v. Luepke*, 495 F.3d 443, 450 (7th Cir. 2007) (quoting *United States v. Williams*, 258 F.3d 669, 672 (7th Cir. 2001)). Instead, compliance with Rule 32 is predicated on "the substance of what occurred" at the sentencing hearing. *Id.* When a defendant does not object at the sentencing hearing regarding his right to allocution, the defendant must show plain error. *United States v. Noel*, 581 F.3d 490, 501–02 (7th Cir. 2009). If plain error is shown, a defendant must also show that the error "affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 501 (citation omitted).

21

Here, the Court addressed the Defendant during his sentencing hearing and personally reminded him of his right to allocution.[5] In response to the Defendant's Motion for a downward variance, the Court proceeded to receive the testimony of five defense witnesses, including the Defendant himself. The Defendant testified for the purpose of offering information in mitigation of punishment. And at no point was the subject matter of the Defendant's testimony restricted by the Court. Following his testimony, the Court also asked the Defendant whether he agreed with everything his attorney said on his behalf, to which the Defendant responded with "yes." (Sentencing Tr. 34.) Given the substance of what occurred at the sentencing hearing, it is difficult for the Defendant to successfully argue that the Court did not "permit the [him] to speak or present any information to mitigate [his] sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii); *see also United States v. Iverson*, 90 F.3d 1340, 1345–46 (8th Cir. 1996) (holding that right to allocution was not denied because the Defendant "knew [she] had a right to speak on any subject of her choosing prior to the imposition of sentence[,] and actually availed herself of that right" by testifying) (internal quotation marks and citation omitted).

Even if plain error is shown, the Defendant cannot show that the error "affected the fairness, integrity, or public reputation of the judicial proceedings." *Noel*, 581 F.3d at 501–02 (citation omitted). According to the Defendant, if the Court—subsequent to his testimony in mitigation of punishment—had expressly asked the Defendant whether he wished to speak again on his own behalf, he would have stated that he "regretted the instant offense" and that he "had been suffering from an addiction." (Def's. Aff. 1, ECF No. 67.) However, the Defendant expressed these very sentiments during his testimony. In fact, the bulk of his testimony related to

---

[5]"[Court:] Now, during this hearing, I may need to ask [the Defendant] some questions. He may also wish to make a statement on his own behalf." (Sentencing Tr. 3.)

his struggles with drug addiction.[6] In essence, the Defendant is arguing that his sentencing hearing lacked fairness or integrity because he was not asked by the Court to repeat his testimony. To credit such an argument would run counter to the spirit of Rule 32, which "does not purport to set out a script" for district courts to follow, *Luepke*, 495 F.3d at 450, but simply requires that a defendant be granted an opportunity "to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). The Defendant was granted that opportunity here.

Accordingly, the Defendant cannot show that his right to allocution claim was violated.

## B.     Evidentiary Hearing Request

The Defendant has requested that the Court conduct an evidentiary hearing to develop the record regarding the claims he presents. A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court finds that the Defendant's Motion along with the files and records of this case conclusively show that the Defendant is entitled to no relief. Consequently, an evidentiary hearing is not warranted, and the Court denies his request.

## CONCLUSION

For the reasons stated above, the Defendant's Amended Motion Under 28 U.S.C. § 2255

---

[6]"[Defense Counsel:] You're asking this Judge for leniency because you're a drug addict, is that right? [Defendant:] Yes, sir. . . . [Defense Counsel:] You're just a regular guy with a drug problem? [Defendant:] Yes. [Defense Counsel:] You want to address that drug problem? [Defendant:] You know, addict, I'm ready to kick it so long, but always seem like problems, that's what you always fall back on." (Sentencing Tr. 30–31.)

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 80] is

DENIED. The Court also DENIES the Defendant's Motions Requesting an Evidentiary Hearing

and a Referral to the United States Magistrate Judge [ECF No. 68], and for Leave to Conduct

Discovery or in the Alternative for an Evidentiary Hearing [ECF No. 86]. The Court further

DENIES AS MOOT the Defendant's Motion for Leave to Expand the Record [ECF No. 69].

SO ORDERED on February 3, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT